812

Affirmed.

BOURJOIS, Inc. (INTERNATIONAL PERFUME CO., Inc., Substituted) v. CHEATHAM CHEMICAL CO.

Patent Appeal No. 2614.

Court of Customs and Patent Appeals.
March 25, 1931.

Louis Alexander, of New York City (Conway P. Coe, of Washington, D. C., of counsel), for appellant.

Will T. Gordon, of Washington, D. C. (Philip Weltner, of Atlanta, Ga., and T. L. Mead, Jr., of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is a trade-mark opposition proceeding. Appeal is taken from a decision of the Commissioner of Patents affirming a decision of the examiner of interferences dismissing the opposition of appellant to the registration by appellee of its claimed trade-mark consisting of the notation "Polly Peachtree" for toilet water, perfumes, bay rum, and other toilet articles. In its representation of the mark the words are in script with the word "Polly" above the word "Peachtree."

In its notice of opposition, appellant alleged prior adoption and use by it of trade-marks for toilet articles of like character, said trade-marks consisting of the words "Peaches," registered February 13, 1917, No. 115,-435, and "Peach Blow," registered October 19, 1886, No. 13,745, the latter mark being again registered on November 11, 1924, No. 191,436; said notice of opposition further alleges that if appellee were permitted to use and register the mark "Polly Peachtree" as a trade-mark for toilet preparations, confusion in trade and deception of the public would result therefrom, and that appellant believes it would be damaged thereby.

Both parties took testimony.

It is conceded that the marks of the parties are used upon goods of the same descriptive properties.

The Commissioner of Patents concurred in the finding of the examiner of interferences that the marks of appellant were used and owned by it prior to the adoption and use by appellee of its mark, but found, as did the examiner, that the marks of the respective parties do not bear such a close resemblance to each other as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers.

■ Appellant offered in evidence certificates of the registrations pleaded, and in addition two other certificates of registration owned by it, one of the words "Peaches and Cream" and the other of the words "Velvet of Peaches." Appellee objected to the introduction in evidence of the two certificates last above named, upon the ground that they were not pleaded in the notice of opposition. Inasmuch as it appears in the decision of the commissioner that he considered the said last-named marks, and as it is clear that he had a right to do so under that provision of section 7 of the Trade-Mark Act of 1905 (15 USCA § 87), which requires in an opposition proceeding a determination of the question of the right of registration of a trade-mark, as well as the sufficiency of objections made thereto, the certificates of registration of the marks "Peaches and Cream" and "Velvet of Peaches" are properly before us.

We therefore have four trade-mark registrations of appellant, "Peaches," "Peach Blow," "Peaches and Cream," and "Velvet of Peaches," all of which registrations were made prior to the first use claimed by appellee of its trade-mark "Polly Peachtree"; and the question is whether said last-named mark so nearly resembles any of said marks of appellant, when applied to goods of the same descriptive properties, as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers.

■ That appellant's marks are valid trade-marks we do not question, but it is also true that if one engaged in the production of perfumeries should manufacture a perfume made from peach blossoms, he would have the right to so label and describe it upon such goods, notwithstanding appellant's trade-marks, provided he did so in such a way as to differentiate such description from the form of the marks used by appellant. Furthermore, Funk & Wagnalls Standard Dictionary gives as one of the definitions of "peach blossom": "A pink color dashed with yellow."

The same authority defines "peach bloom" as: "The delicately fine powder found on a ripe peach; hence a soft pinkish color of the skin, especially of the cheek."

It also defines "peach blow," which is one of appellant's marks: "A light purple glare inclining to pink, seen on some oriental porcelain."

We think that one manufacturing a face powder or rouge having the color of "peach blossom," "peach bloom," or "peach blow," as above defined, would have the right to indicate such color upon such goods without infringing appellant's trade-marks.

We have referred to the fact that certain combinations of words containing the word "peach" may be descriptive of certain goods of the class to which the marks here in issue are applied, as a circumstance which we think it proper to consider in passing upon the likelihood of confusion arising from the use of the marks of the respective parties hereto.

In Nims on Unfair Competition, § 216, certain observations are made which we think are sound and here applicable:

"There is a distinct difference between a true trade-mark and a name in the public domain at the very instant of first use. When a fanciful word is first used that first use is as a trade-mark and *it has only one meaning in all the world*, i. e., its trade-mark meaning. The day Kodak was first used on a camera, it had only one meaning, i. e., its trade-mark meaning. * * *

"On the other hand, in the case of a word of the language—or a name in the public domain, when it is first used as a trade-mark it has also a significance other than its trade-mark meaning and if its trade-mark use is such that it is possible that the public may give to it, even when used on merchandise its public meaning instead of its trade-mark meaning, it may be that the trade-mark rights in the word are limited by, and must follow the education of the public in recognizing its trade-mark meaning. * * * " (Italics quoted.)

Appellant contends that the key word of its various trade-marks is the word "peach," and that its various combinations are only to indicate various members of its "peach" family. This may be true, and if "peach" was a purely fanciful word, we would be of the opinion that any one purchasing the same class of goods under another trade-mark, but in which the word "peach" occurs, would be very likely to ascribe to appellant origin of such goods from that fact alone; but, holding as we do that the word "peach," as used by appellant, is not a fanciful word, we think the purchasing public would not be so likely to ascribe to appellant origin of goods, because of the presence of the word "peach" in both marks, as if it were a purely fanciful word. Therefore, in ascertaining whether confusion or mistake will arise in the mind of the public in the use of the two marks, the presence of the word "peach" in the two marks is not determinative of the issue, but the question is whether the words "Polly Peachtree" are confusingly similar to the words "Peaches," "Peach Blow," "Peaches and Cream," and "Velvet of Peaches," or any of them, when applied to goods having the same descriptive properties.

■ It appears from the testimony that the words "Polly Peachtree" have been used for years as a non de plume by a columnist in a daily newspaper in Atlanta, Ga., where appellee is located, and that Peachtree street is a well-known street in that city, and that it was from these facts that appellee conceived the idea of adopting the words "Polly Peachtree" as a trade-mark for use upon its goods.

Of course, if confusion or mistake is likely to be caused by the use of appellee's mark, its good faith cannot aid it in securing registration. We simply say here that there is no fraudulent intent claimed or shown with reference to the conduct of either of the parties to the case at bar.

■ Considering, therefore, the trade-mark "Polly Peachtree" as a whole, we are of the opinion that it is not so similar to the marks of appellant, or any of them, as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers.

We think purchasers would not dissect the mark and emphasize the syllable "peach" in "Peachtree," but would either remember the word "Polly" or the words "Polly Peachtree" as a whole, and we do not think that upon seeing the mark, or hearing it pronounced, the ordinary purchaser of the goods to which the mark was applied would ascribe their origin to appellant.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

BLAND, Associate Judge (dissenting).

I must dissent from the opinion of the majority for two reasons:

First. The reasoning of the opinion leads to the conclusion that there would be less likelihood of confusion between "Polly Peachtree" and the trade-marks of the opposer "Peaches," "Peach Blow," "Peaches and Cream," and "Velvet of Peaches," on account of the fact that "Peaches" is suggestive rather than "fanciful." The fact that the word "Peach" is suggestive, which the majority concedes in no way invalidates the trade-mark, would make the probability of confusion more likely since the predominant thought in "Polly Peachtree" obviously is "Peach," which is equally suggestive of the character of the goods in all the marks.

It is hardly logical to say that "appellant's marks are valid trade-marks," and at the same time sustain appellee's right to register chiefly upon the theory, as I understand the situation, that opposer unfortunately selected trade-marks which are so suggestive as to make confusion easy.

The majority opinion says:

"That appellant's marks are valid trade-marks we do not question, but it is also true that if one engaged in the production of perfumeries should manufacture a perfume made from peach blossoms, he would have the right to so label and describe it upon such goods,

notwithstanding appellant's trade-marks, provided he did so in such a way as to differentiate such description from the form of the marks used by appellant."

Just what is meant by this statement is difficult to say. If the writer intended to convey the impression that on account of the word "Peach," in appellant's marks, being suggestive, the appellee would have the right to so label his peach perfumery and in doing so use the word "Peach" as a trade-mark, regardless of confusion that might result, it is clearly against numerous decisions by this court. If the statement does not mean that, it is useless and misleading. Of course, he would have the right to "describe" his product by saying that it was made from peach blossoms, but that is far from saying that he would have the right to use "Peach Blossom" as a trade-mark. We have repeatedly held that the right to register is to be distinguished from the right to use. National Biscuit Co. v. Sheridan, 44 F.(2d) 987, 18 C. C. P. A. ——; American Fruit Growers, Inc., v. Michigan Fruit Growers, Inc., 38 F.(2d) 696, 17 C. C. P. A. 906; California Packing Corp. v. Tillman & Bendel, Inc., 40 F.(2d) 108, 17 C. C. P. A. 1048. A trade-mark may not be registered if it is probable that confusion will result between it and a valid registered mark. Since appellee concedes that appellant's trade-marks are valid, the fact that they are suggestive should not lessen our vigilance in ascertaining the probability of confusion, since if they both suggest the same thing there is more probability of confusion than there would otherwise be.

Second. Irrespective of the above consideration, I think this record presents a state of facts from which no other reasonable conclusion can be deduced than that confusion to the public will result from the registration and use of appellee's trade-mark "Polly Peachtree." For two or three generations, appellant's "Peach brand" trade-marks have been one of the leaders of toilet articles and have been popular with the toilet article purchasing public. It is natural to conclude that when a new trade-mark containing the word "Peach," used in connection with the sale of a toilet article, is placed on the market, the public will think it is another of the "Peach" family of appellant. The fact that appellant has four "Peach" trade-marks increases the likelihood of confusion. Many purchasers will be led to buy "Polly Peachtree" toilet water through an incorrect belief as to its origin.

Congress intended to encourage the registration of trade-marks only which would not lead to confusion. It had no right to remedy, and did not attempt to provide a remedy for, the confusion the public would necessarily have to suffer by virtue of rights and limitations which grew out of the use of trade-marks and irrespective of their registration.

Since I am convinced that confusion will result and disagree with the inferred reasons for arriving at the conclusion which the majority reached, I must dissent. The opposition should have been sustained.

HATFIELD, Associate Judge, concurs in the dissenting opinion.